EXHIBIT B

| | |
|---|---|
| STATE OF NORTH CAROLINA<br>COUNTY OF CABARRUS | IN THE GENERAL COURT OF JUSTICE<br>SUPERIOR COURT DIVISION<br>21 CVS 000006 |

| | |
|---|---|
| ART ENTERPRISE, LLC,<br><br>                Plaintiff,<br>v.<br><br>LIBERTY MUTUAL INSURANCE<br>COMPANY; LIBERTY MUTUAL MID-<br>ATLANTIC INSURANCE COMPANY;<br>LIBERTY MUTUAL PERSONAL<br>INSURANCE COMPANY and OHIO<br>SECURITY INSURANCE COMPANY,<br><br>                Defendants. | **AMENDED COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

**NOW COMES** the Plaintiff, by and through undersigned counsel, to complain of the Defendants by alleging and saying as follows:

## PARTIES

1. Plaintiff ART Enterprise, LLC (hereinafter "Plaintiff" or "ART Enterprise") is a North Carolina corporation with its principal place of business in Concord, North Carolina. At all times relevant to this Complaint, Plaintiff owned a commercial building located at 384 Church Street North, Concord, North Carolina 28025-4563 (hereinafter "the Property") that operated as "Home Outlet," an in-person and online residential furniture store.

2. Upon information and belief, Defendant Liberty Mutual Personal Insurance Company is a company existing under the laws of the State of Massachusetts, with its principal place of business in Boston, Massachusetts. Upon information and belief, at all times relevant to the Complaint, Defendant Liberty Mutual Personal Insurance Company was doing substantial business in North Carolina.

3. Upon information and belief, Defendant Liberty Mutual Insurance Company is a company existing under the laws of the State of Massachusetts, with its principal place of business in Boston, Massachusetts. Upon information and belief, at all times relevant to this Complaint, Defendant was doing substantial business in the State of North Carolina.

4. Upon information and belief, Defendant Liberty Mutual Personal Insurance Company is a company existing under the laws of the State of Massachusetts, with its principal place of business in Boston, Massachusetts. Upon information and belief, at all times relevant to the Complaint, Defendant Liberty Mutual Personal Insurance Company was doing substantial business in North Carolina

5. Upon information and belief, Defendant Ohio Security Insurance Company is a company existing under the laws of the State of New Hampshire, with its principal place of business in Concord, New Hampshire. Upon information and belief, at all times relevant to this Complaint, Defendant Ohio Security Insurance Company was doing substantial business in the State of North Carolina.

## JURISDICTION & VENUE

6. Jurisdiction is proper pursuant to N.C.G.S. §§ 7A-240 and 7A-243.

7. The Court has personal jurisdiction pursuant to N.C.G.S. § 1-75.4.

8. The Defendant has been properly served and brought before the Court pursuant to Rule 4 of the North Carolina Rules of Civil Procedure.

9. Venue is proper pursuant to N.C.G.S. § 1-82.

## FACTUAL ALLEGATIONS

10. The commercial building on the Property (hereinafter "the Building") is an approximately 12,000 square foot single-story brick structure building that features "Home Outlet" furniture showroom. The Building has an adhered ethylene propylene diene terpolymer ("EPDM") roofing system over wood roof decking. The EPDM roofing system (hereinafter "the Roof") has an upper and lower section. The upper section is gabled with structural sloping while the upper section is sloped. Both the upper and lower section of the Roof lead to an external gutter system, scuppers, and downspouts.

11. On February 6, 2020, an unnamed severe weather event (hereinafter "the Storm") comprised of confirmed tornadoes and high wind gusts barreled through the Carolinas. Reports of destruction were noted in Cabarrus, Mecklenburg, Gaston, and Rowan Counties in North Carolina and Spartanburg, South Carolina among other areas in the region. High sustained wind conditions caused severe damaged to the Roof, resulted in significant water damage to the interior of the Building, and otherwise caused structural damage to the Building (hereinafter the "Loss"). As a result of the damage to the Roof, immense amounts of water, both during and after the Storm, intruded into the interior of the Building and damaged the ceilings and walls throughout.

12. At all times relevant to this Complaint, the Property was insured by the Defendants under a Commercial Package Insurance Policy, Policy No. BKS577209244 (hereinafter "the Policy"). A copy of the Policy is attached hereto as <u>Exhibit A</u>.

13. At all times relevant to this Complaint, the Policy provided special form coverage for "physical loss or damage to Covered Property," including the Building and its Roof. Damages from the Storm, specifically from associated winds and rains, to the Building and its Roof were covered causes of loss under the Policy, in addition to any other losses caused by the Storm.

**HOWARD, STALLINGS, FROM, ATKINS, ANGELL & DAVIS, P.A.**
**Attorneys at Law**
**Raleigh, North Carolina**

Case 1:21-cv-00164-CCE-LPA   Document 1-2   Filed 02/25/21   Page 4 of 17

Plaintiff timely paid all premiums for the Policy, and the Policy was in full force and effect in February 2020 at the time of the Storm.

14. Within 24 hours of the Storm subsiding, Plaintiff notified the Defendants of the Loss and made a claim under the Policy. Specifically, Plaintiff notified the Defendants that the Roof had been compromised, and that that there was significant water intrusion throughout the Building caused by the Storm. Plaintiff's claim was assigned Claim Number 23782197 (hereinafter "the Claim").

15. On February 24, 2020, the Plaintiff obtained an estimate from Elevate Roofing & Exteriors (hereinafter "Elevate"), a licensed roofing and general contracting company, to repair or replace the Roof in the amount of $303,749.68. A copy of Elevate's estimate is attached hereto as Exhibit B. For the restoration and remodel services needed to repair the interior of the Building, Plaintiff obtained an estimate from American Water & Fire of Wilmington (hereinafter "American") in the amount of $62,076.92. A copy of American's Estimate is attached hereto as Exhibit C. Plaintiff submitted the estimates written by Elevate and American to the Defendants and made efforts to mitigate the damage by tarping the Roof.

16. On or around March 10, 2020, the Defendants purportedly inspected the Property through David D. Zimpel, P.E. (hereinafter "Mr. Zimpel") of Rimkus Consulting Group (hereinafter "Rimkus"). Based on Mr. Zimpel's purported inspection, he determined that the damaged to the Roof was caused by normal aging and improper repairs. Mr. Zimpel concluded that the Roof and the Building did not suffer from any wind-related damage. Mr. Zimpel's report grossly and intentionally understated and ignored significant damages to the entirety of the Building and the Roof. A copy of the Rimkus report dated March 17, 2020 is attached hereto as Exhibit D.

**HOWARD, STALLINGS, FROM, ATKINS, ANGELL & DAVIS, P.A.**
Attorneys at Law
Raleigh, North Carolina

Case 1:21-cv-00164-CCE-LPA   Document 1-2   Filed 02/25/21   Page 5 of 17

17.  On March 19, 2020, the Defendants sent a letter to Plaintiff stating that their position on the claim was that wind damage was not the cause of the Loss and therefore coverage was not available under the Policy and the Claim was denied.

18.  Plaintiff requested that the Defendants reconsider their position. With no response from the Defendants, Plaintiff hired Michael Scordato (hereinafter "Mr. Scordato"), a North Carolina licensed Public Adjuster and Owner of InterCoastal Public Adjusters, LLC, to adjust the Claim. The Plaintiff's contract with Mr. Scordato assigned rights to future benefits paid by the Defendants to Elevate so that the repair work to the Roof could be performed as soon as possible. A copy of the Plaintiff's contract with Mr. Scordato is attached hereto as Exhibit E.

19.  At its own effort and expense after the denial letter, Plaintiff hired HICAPS, Inc. and Facility Consulting Group, two well-respected professional engineering and contracting groups in North Carolina. On or around August 5, 2020, Jonathan Layton, Project Engineer with HICAPS, Inc. and Randal Keel of Facility Consulting Group performed an on-site inspection of the Property including the Building and the Roof. Their inspection revealed significant damage to the Building envelope, interior elements, and the Roof system. Mr. Layton and Mr. Keel's report determined that storm-related uplifts of the Roof caused damage to the Roof and the Building requiring a complete replacement of the roof and repair of the interior. A copy of this report which has been previously submitted to the Defendants is attached hereto as Exhibit F.

20.  On or around September 17, 2020, Mr. Scordato submitted Plaintiff's Sworn Proof of Loss to the Defendants making a claim for $410,314.81. Plaintiff provided a line-item description for the materials and services that were necessary to repair the Roof, the Building and all resulting interior water damage from the storm. A copy of the Sworn Proof of Loss and supporting documentation is attached hereto as Exhibit G.

21. On September 24, 2020, without any further investigation, the Defendants sent another denial letter to Plaintiff, indicating that they reviewed Mr. Kimpel's and Mr. Layton's report and refused to make any payment on the Loss. A copy of the September 24, 2020 letter is attached hereto as <u>Exhibit H</u>.

22. Without payment of the Claim, and as a result of the Defendants delay tactics and repeated, and unreasonable denials, Plaintiff has incurred significant expenses in mitigating its damages and is at risk of losing its tenant.

23. At all times, Plaintiff made itself and the Property available to the Defendants, their agents, and their representatives and fully cooperated with the Defendants, their agents, and their representatives to inspect and investigate the damage caused by the Storm.

24. The Defendants have failed to provide a reasonable basis for their failure to pay the amounts set forth in Plaintiff's Sworn Statement in Proof of Loss or for their protracted investigation and unreasonable positions taken in repeatedly denying Plaintiff's Claim.

25. At all times, throughout the investigation of the Claim, Plaintiff complied as promptly as possible with every request made by the Defendants for information regarding the Claim and has otherwise fulfilled all conditions precedent and contractual obligations under the Policy prior to the filing of this lawsuit.

26. Following the Storm, Plaintiff took immediate action and applied tarps on the Roof to prevent further damage to the Roof and water intrusion to the Building. At all times, it was clear to all parties and their respective agents and representatives that application of tarps was a temporary measure that did not and could not permanently restore the Roof to its pre-Loss condition. Without the Defendants paying the Claim and honoring the Policy, Plaintiff has done everything in its power to mitigate its damages.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment)

27. Plaintiff realleges and incorporates by reference the preceding allegations as if set for verbatim herein.

28. Plaintiff has initiated this declaratory judgment action in order to obtain a judicial determination that the Claim is a covered loss under the Policy and that Defendants are due and owing $410,314.81 to Plaintiff on the Claim.

29. There is an actual and existing dispute between the Parties on this issue.

30. Plaintiff is entitled to a declaratory judgment pursuant to N.C.G.S. § 1-253, et. seq., declaring that they are entitled to specific performance and payment of the benefits due under the Policy.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract)

31. Plaintiff realleges and incorporates the preceding allegations as if set forth verbatim herein.

32. The Policy constitutes a valid and enforceable contract between Plaintiff and the Defendants.

33. The Defendants breached the terms of this Policy by failing to provide the benefits, coverage and payments due thereunder in that they:

   a. Purposefully and repeatedly adhered to a baseless position as to the value of and coverage for the Claim in order to deny the Claim, despite overwhelming evidence that the Claim was covered and worth well over $400,000;

b. Repeatedly denied the Claim and refused to adjust the Claim despite overwhelming contradictory evidence that the Claim was worth well over $400,000;

c. Acted intentionally in delaying the adjustment of Plaintiff's Claim, in taking unreasonable positions as to the coverage provided under the Policy, and in purposefully providing little to no explanation for refusing to adjust the Claim, all to purposefully deny Plaintiff its benefits under the Policy;

d. Repeatedly and baselessly alleging that the reports, estimates and other evidence provided by Plaintiff had no substantive impact on the value of the Claim without any explanation or reasoning as to why they had no substantive impact;

e. Purposefully engaging in various delay tactics intended to frustrate Plaintiff's efforts to resolve the Claim, all in an attempt to pressure Plaintiff into foregoing seeking payment on the Loss, to deny Plaintiff its benefits under the Policy, and to force Plaintiff to initiate this litigation to recover the amounts owed under the Policy;

f. Refusing to make any payment on the Claim whatsoever;

g. Generally, refusing to pay the Claim when it was due under the Policy; and

h. Otherwise breaching the terms of the Policy as Plaintiff will demonstrate at trial.

34. As a direct and proximate result of the Defendants' breach of the Policy, Plaintiff has been damaged in an amount set forth in the Sworn Proof of Loss that is attached hereto, and Plaintiff is further entitled to consequential and contractual damages as proven through discovery and trial.

**HOWARD, STALLINGS, FROM, ATKINS, ANGELL & DAVIS, P.A.**
Attorneys at Law
Raleigh, North Carolina

Case 1:21-cv-00164-CCE-LPA   Document 1-2   Filed 02/25/21   Page 9 of 17

35. Plaintiff's damages are in excess of this Court's jurisdictional threshold of Twenty-Five Thousand Dollars ($25,000.00).

36. Plaintiff is entitled to prejudgment interest at the legal rate of 8%.

### THIRD CLAIM FOR RELIEF
### (Breach of the Covenant of Good Faith and Fair Dealing)

37. Plaintiff realleges and incorporates the preceding allegations as if set forth verbatim herein.

38. The Defendants' conduct alleged herein was in bad faith and in violation of the covenant of good faith and fair dealing implied by law into the Policy.

39. A nonexclusive list of the Defendants' bad faith includes:

   a. Misrepresenting pertinent facts relating to coverages at issue, particularly regarding the cause of the damage to the Roof and interior of the Building and the value of and coverage for the Claim;

   b. Failing to acknowledge and act reasonably promptly upon communications with respect to the Claim;

   c. Repeatedly and purposefully adhering to a baseless position as to the value and coverage of the Claim, despite overwhelming evidence that the claim was worth over $400,000;

   d. Repeatedly inviting Plaintiff to spend its time and money gathering more estimates, reports, and other evidence of the true value of the Claim, only to completely ignore such evidence and continue to deny the Claim;

e. Refusing to provide reasonably prompt and clear communications as to why Plaintiff's estimates, reports, and evidence did not support coverage of the Claim;

f. Seeking out, hiring and relying upon biased and predictable experts;

g. Intentionally and maliciously failing to affirm or deny coverage of the Claim within a reasonable time after a Proof-of-Loss Statement was submitted;

h. Ignoring evidence provided by a Sworn Proof of Loss;

i. Failing to conduct a reasonable investigation of the Claim;

j. Purposefully engaging in numerous delay tactics in order to pressure Plaintiff to forego pursuing its Claim and eventually forcing Plaintiff to initiate this lawsuit in order to recover the amount that is owed on the Claim;

k. Purposefully failing to act in good faith to effectuate prompt, fair, and equitable settlement of the Claim, despite liability under the Policy being reasonably clear; and

l. As will otherwise be shown through discovery and trial.

40. As a proximate result of the Defendants' breach of the covenant of good faith and fair dealing, Plaintiff has been damaged in an amount in excess of $400,000. Additionally, Plaintiff is entitled to recover punitive damages from the Defendants for the above-described conduct, which was willful and wanton, in the maximum amount permitted by law.

## FOURTH CLAIM FOR RELIEF
### (Unfair Claims Settlement Practices)

41. Plaintiff realleges and incorporates the preceding allegations as if set forth verbatim herein.

42. The Defendants are, and at all times relevant hereto, were engaged in the business of selling and writing insurance policies and adjusting claims thereunder, and, at all times alleged herein, its actions were in or affecting commerce within the State of North Carolina.

43. Upon information and belief, the conduct of the Defendants constitutes unfair claims settlement practices that violate one or more of the subparts of N.C.G.S. § 58-63-15(11) including, but not limited to:

   a. Purposely failing to act in good faith to effectuate prompt, fair, and equitable settlement of the Claim in which liability had become reasonably clear based on the estimates, reports, and other evidence provided by Plaintiff to the Defendants;

   b. Intentionally refusing to review or consider the significant amount of evidence regarding the extent of damage to the Property and the value of the Claim provided by Plaintiff or to incorporate such evidence into its adjustment of the Claim, despite repeatedly and expressly informing Plaintiff that it would or had done so;

   c. Ignoring the Sworn Proof of Loss Statement provided by the Plaintiff and the expert reports and detailed repair estimates provided contemporaneous and subsequent thereto;

   d. Failing to conduct a reasonable investigation by only performing one site inspection, and only utilizing biased and predictable experts;

   e. Failing to provide any explanation or communication to Plaintiff regarding why the evidence provided by Plaintiff was insufficient to alter the Defendants' denial of Plaintiff's claim, despite the fact that such evidence overwhelmingly

showed that the Roof was completely compromised and that all interior water damage was covered by the Policy;

f.  Failing to adopt and implement reasonable standards for the prompt investigation and adjustment of claims arising under its policies, including the Claim, and for resolution of those claims under its policies, including the Policy;

g.  Purposely refusing to abide by its own standards for prompt investigation and adjustment of claims arising under its policies and attempting to manipulate those procedures for its own benefit;

h.  Compelling the insured to institute and participate in litigation to recover amounts due as payment for the Claim by intentionally delaying resolution of the Claim, intentionally failing to communicate or explain why Plaintiff's evidence regarding the value of the Claim was insufficient to alter the initial estimate of the Claim, refusing to consider, review, incorporate, or respond to the evidence provided by Plaintiff in good faith, and otherwise delaying payment of the Claim; and

i.  Other particulars as will be adduced through further investigation, discovery, or at trial.

44. The Defendants' violation of N.C.G.S. § 58-63-15(11) is a per se violation of N.C.G.S. § 75-1.1.

45. The conduct of the Defendants directly violates N.C.G.S. § 75-1.1 in that their acts were unfair, deceptive, oppressive, and substantially injurious to Plaintiff and were an inequitable assertion of its power and position over Plaintiff under the circumstances.

46. The Defendants' unfair and deceptive trade acts or practices were in or affecting commerce.

47. As a proximate result of the Defendants' unfair claim settlement practices and unfair and deceptive trade acts and practices, Plaintiff has been damaged.

48. Pursuant to N.C.G.S. § 75-16, Plaintiff is entitled to treble its contract and compensatory damages.

49. Pursuant to N.C.G.S. § 75-16.1, Plaintiff is entitled to an award of reasonable attorney's fees.

**WHEREFORE**, Plaintiff prays the Court that:

1. That the Court enter a declaratory judgment that Plaintiff is entitled to specific performance of the Policy and payment of the Claim;

2. That Plaintiff have a jury trial on all issues properly triable;

3. That Plaintiff have and recover of the Defendants a sum equal to the amount of $410,314.81, the amount provided for in Plaintiff's Sworn Proof of Loss and equal to the benefits due under the Policy, as well as consequential and other contractual damages to be proven at trial;

4. That Plaintiff be awarded treble its contract and compensatory damages and extra expense as provided by N.C.G.S. §§ 75-1.1 and 75-16, or at Plaintiff's election, contract, compensatory, and punitive damages;

5. That the Court tax prejudgment interest on the compensatory award and post judgment interest on the entire judgment as permitted by law;

6. That the Court tax Plaintiff's attorney's fees against the Defendants; and

7. Plaintiff have such other and further relief as the Court may deem just and proper.

This the 24th day of February, 2021.

                                        **HOWARD, STALLINGS, FROM,**
                                        **ATKINS, ANGELL & DAVIS, P.A.**

                     By: _/s/ Rebecca H. Ugolick_____
                           Rebecca H. Ugolick (State Bar No. 48126)
                           Robert H. Jessup (State Bar No. 42945)
                           5410 Trinity Road, Suite 210
                           Raleigh, North Carolina 27607
                           T: (919) 821-7700; F: (919) 821-7703
                           E: rugolick@hsfh.com
                           rjessup@hsfh.com
                           *Attorneys for Plaintiff*

| STATE OF NORTH CAROLINA | File No. 21 CVS 000006 |
|---|---|
| CABARRUS County | In The General Court Of Justice<br>☐ District  ☒ Superior Court Division |

| Name Of Plaintiff | |
|---|---|
| ART Enterprise, LLC | **CIVIL SUMMONS**<br>☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE) |
| Address | |
| City, State, Zip | |
| **VERSUS** | G.S. 1A-1, Rules 3 and 4 |
| Name Of Defendant(s) | Date Original Summons Issued |
| LIBERTY MUTUAL INSURANCE COMPANY et al | Date(s) Subsequent Summons(es) Issued |

**To Each Of The Defendant(s) Named Below:**

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| Ohio Security Insurance Company c/o<br>c/o Mike Causey, NC Insurance Commissioner<br>NC Department of Insurance<br>1201 Mail Service Center   Raleigh NC  27699 | |

⚠️ **IMPORTANT! You have been sued!** These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra!** Estos papeles son documentos legales. ¡NO TIRE estos papeles!
Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and
2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff) | Date Issued | Time ☐ AM ☐ PM |
|---|---|---|
| Rebecca H. Ugolick<br>Howard Stallings From Atkins Angell & Davis<br>Post Office Box 12347<br>Raleigh, NC   27605 | Signature | |
| | ☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court | |

| ☐ **ENDORSEMENT (ASSESS FEE)**<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Date Of Endorsement | Time ☐ AM ☐ PM |
|---|---|---|
| | Signature | |
| | ☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

|  | **RETURN OF SERVICE** |  |
|---|---|---|

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|
| | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|
| | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 4/18
© 2018 Administrative Office of the Courts